1

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA –
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

NOV 04 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

Deise Almeida Ellston

William James Ellston

Plaintiff(s),

Case No.: 5:25 CV 00120

vs.

Frederick County, Virginia,

Frederick County Public Schools Virginia

David Rudy, Principal of R.E. Aylor Middle
School,

Chance Varner, Assistant Principal of R.E.
Aylor Middle School,

Marcella Simmons, Assistant Principal of
R.E. Aylor Middle School,

Alexa Rogers, School Counselor of R.E. Aylor
Middle School,

Nicole Riegel Marko, School-Affiliated
Volunteer of R.E. Aylor Middle School,

Jill Couturiaux, Senior Lead Teacher of R.E.
Aylor Middle School,

Deputy Steven Smallwood, School Resource
Officer (SRO) of R.E. Aylor Middle School,

George Hummer, Superintendent of
Frederick County Public Schools, Virginia

Defendant(s).

**COMPLAINT FOR DAMAGES,
INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT FOR
VIOLATIONS OF:**

- **The Americans with Disabilities Act
  (ADA),**
- **Section 504 of the Rehabilitation Act,**
- **Title VI of the Civil Rights Act of 1964,**
- **The Family Educational Rights and
  Privacy Act (FERPA),**
- **The Equal Educational Opportunities
  Act of 1974 (EEOA),**
- **The First and Fourteenth Amendments
  to the U.S. Constitution via 42 U.S.C. §
  1983,**
- **and Multiple Provisions of the Virginia
  Code, including but not limited to §§
  22.1-279.3:1, 22.1-315, 8.01-45,
  18.2-57, 18.2-60.3, and 18.2-152.7:1**

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under **28 U.S.C. § 1331** (federal question), **28 U.S.C. § 1343** (civil rights), and supplemental jurisdiction over state law claims pursuant to **28 U.S.C. § 1367.** Supplemental jurisdiction over state law claims is invoked under 28 U.S.C. § 1367.

2.  Venue is proper in this Court under **28 U.S.C. § 1391(b),** as all events and omissions giving rise to the claims occurred within Frederick County, Virginia, within the jurisdiction of the Western District of Virginia – Harrisonburg Division.

## PARTIES

3.  Plaintiffs **Deise Almeida Silva Ellston** and **William Ellston** are the natural mother and legal guardians of minor E.M.A.G a minor child with disabilities protected under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). At all relevant times, E.M.A.G. was a student enrolled at R.E. Aylor Middle School in Frederick County, Virginia.

4.  Defendant **Frederick County** is a political subdivision of the Commonwealth of Virginia.

5.  Defendant **Frederick County Public Schools ("FCPS")** is a public educational agency responsible for administering public education in Frederick County, Virginia.

6.  Defendant **David Rudy** serves as the Principal of R.E. Aylor Middle School, operating under the jurisdiction of Frederick County Public Schools (FCPS), a public educational agency governed by federal and state education statutes.

7.  Defendant **Chance Varner** serves as the Assistant Principal at R.E. Aylor Middle School, operating under the authority of the Frederick County Public Schools (FCPS), a public educational agency subject to federal and state education laws.

8.  Defendant **Marcella Simmons** serves as the Assistant Principal at R.E. Aylor Middle School, operating under the authority of the Frederick County Public Schools (FCPS), a public educational agency subject to federal and state education laws.

9.  Defendant **Alexa Rogers** is employed as a school counselor at R.E. Aylor Middle School, under the jurisdiction of Frederick County Public Schools (FCPS). At all relevant times, she was responsible for assessing students' mental health and implementing suicide prevention protocols pursuant to Virginia Code § 22.1-272.1.

10. Defendant **Nicole Riegel Marko** is the President of the Parent Teacher Student Organization (PTSO) at R.E. Aylor Middle School. In this role, she operated as a school-affiliated volunteer under the direction and authority of Frederick County Public Schools (FCPS).

11. Defendant **Jill Couturiaux** is a Senior Lead Teacher at R.E. Aylor Middle School, acting under the authority and supervision of Frederick County Public Schools (FCPS), a public educational agency subject to federal and state education laws.

12. Defendant **Deputy Steven Smallwood** is a School Resource Officer (SRO) employed by the Frederick County Sheriff's Office and assigned to R.E. Aylor Middle School during the relevant time period.

13. Defendant **George Hummer** serves as Superintendent of Frederick County Public Schools. At all relevant times, he was responsible for overseeing the operations, personnel, and legal compliance of FCPS and its affiliated schools, including R.E. Aylor Middle School.

## FACTUAL ALLEGATIONS

14. At all relevant times, E.M.A.G. was a student enrolled at R.E. Aylor Middle School, under the jurisdiction of Frederick County Public Schools (FCPS).

15. E.M.A.G. is a child with multiple diagnosed disabilities, including ADHD, OCD, depression, anxiety and suicidal ideation. He qualifies for protections under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA).

16. E.M.A.G. qualifies for an **Individualized Education Program (IEP)** under the **Individuals with Disabilities Education Act (IDEA)** due to his multiple diagnosed disabilities, including ADHD, OCD, depression, anxiety and suicidal ideation. Despite this qualification, Frederick County Public Schools (FCPS) failed to initiate or implement an **IEP** for E.M.A.G. Instead, the school opted to create a **Section 504 Plan**, which was developed and approved on March 4, 2025 which does not provide the same level of tailored educational services and support required under **IDEA**. However, FCPS failed to implement the mandated accommodations, including behavioral support, classroom modifications, and mental health monitoring. '

17. By failing to provide E.M.A.G. with an IEP, FCPS denied him access to the specialized educational services to which he is entitled under federal law, thereby violating his rights under the **IDEA** and **Section 504 of the Rehabilitation Act of 1973**. The Section 504 Plan implemented by FCPS failed to provide the necessary accommodations and modifications required to meet E.M.A.G.'s specific educational needs, including behavioral support, academic modifications, and mental health services.

18. From the beginning of the **2024–2025** academic year, E.M.A.G. was subjected to continuous bullying, including racial and ableist harassment. He was routinely mocked, called "weird", ''fat'' and encouraged by peers to harm himself. These actions caused emotional distress, social withdrawal, and academic progression.

19. Despite repeatedly reporting incidents to staff, including Assistant Principal Chance Varner, no protective action was taken. Rather than investigating, school officials instructed E.M.A.G. to "write reports" about his own victimization, improperly shifting the burden of intervention onto the student.

20. On February 5, 2025, Assistant Principal Varner acknowledged via email that E.M.A.G. had been pushed by another student. Nevertheless, no disciplinary action was taken against the aggressor, and no protective measures were enacted, despite the school's knowledge of repeated bullying.

21. On the same date, school counselor Alexa Rogers completed a "Self-Harm Report" in which E.M.A.G. disclosed suicidal ideation and auditory hallucinations instructing him to harm himself and others. This disclosure constituted a mental health emergency under Virginia law. However, Ms. Rogers improperly classified the risk as "low," failed to initiate a formal threat assessment, and did not notify E.M.A.G.'s parents as required by Va. Code § 22.1-272.1.

22. Ms. Rogers' actions breached mandatory reporting obligations under state law and internal FCPS suicide prevention protocols. Her failure to intervene constituted negligence per se and deliberate indifference to the student's life and safety.

23. On March 17, 2025, FCPS's monitoring system flagged a search conducted by E.M.A.G. on his school-issued computer: "what happens if you drink bleach." No crisis response was initiated, and no notice was provided to his parents. This omission again violated suicide risk policies under § 22.1-272.1 and the Procedural Safeguards.

24. On April 8, 2025, E.M.A.G. video surveillance footage titled "Enzo's Assault Day"—obtained through FOIA—clearly shows E.M.A.G. being physically assaulted in the school cafeteria. The footage captures another student violently shoving E.M.A.G. resulting in documented facial paralysis (Bell's palsy).

25. The assault was captured on school surveillance video, which was initially withheld from the parents under the justification that a FOIA request was necessary. The School Resource Officer (SRO), Deputy Smallwood, and Assistant Principal Chance Varner denied immediate access to the footage, despite the urgent need to document and report the injuries sustained. Instead of receiving treatment, E.M.A.G. was isolated in a room for hours. His injuries were not documented, no investigation occurred, and no criminal or administrative accountability followed. These omissions disregarded state-mandated child injury protocols and denied him access to emergency care and due process.

26. When asked why no photos were taken of Enzo's injuries, Mr. Varner responded that "there was nothing to take pictures of" and that nurses were not required to document visible injuries. These claims contradict standard practices and demonstrate deliberate efforts to erase evidence and obstruct parental access to information, in violation of FERPA and Virginia education laws.

27. These on-record statements confirm a conscious decision by school officials to refrain from reporting or responding to a violent incident, despite knowledge of its severity.

28. During the meeting as recorded in the video "Parent's Watching Assault Video", Principal Rudy further minimized the assault, stating that incidents like this "happen all the time between boys," and saw no reason to notify the parents or involve law enforcement. Even after receiving a formal medical diagnosis confirming neurological injury, no disciplinary, investigative, or protective measures were taken. The failure to notify his parents, provide emergency medical care, or initiate mandatory reporting violated Va. Code §§ 22.1-279.1:1 and 22.1-279.3:1, as well as multiple provisions of the Virginia Procedural Safeguards. This decision reflects gross negligence and reckless disregard for student safety and legal obligations. "Supporting Exhibits video"

29. In the same meeting, Deputy Smallwood and Mr. Varner minimized the aggression by alleging mutual combat and labeling Enzo as the initial aggressor—despite admitting that Enzo was physically struck multiple times by the other student. Principal Assistant

Varner Chance and the School Resource Officer (SRO) admit that the assault occurred but state that it was "not criminal" and that "nothing will be done" about the offending student.

30. His response demonstrates institutional disregard for the physical and emotional safety of E.M.A.G. and a willful failure to meet mandatory reporting and safety obligations under Virginia law.

31. In the video meeting, Enzo's stepfather, a U.S. military veteran, explained that the force of the strike caused visible injury and paralysis, noting that even in combat training he had "never seen a slap cause facial paralysis." The staff continued to question the severity of the attack and denied that it warranted disciplinary or legal intervention.

32. When Enzo's parents explained that their son had been the target of long-standing bullying by the same student—including a previous locker-pushing incident months prior—the administration dismissed the relevance of these claims, asserting that old footage had already been erased. However, the school failed to ever take disciplinary or investigative action on prior incidents.

33. During the video meeting, Enzo's parents also revealed that the assailant had provoked the fight by making egregiously racist and sexually explicit remarks toward Enzo, including stating that his mother had been "raped by 10 Black men at the same time." Although the administration acknowledged that racial comments had been made, they dismissed their gravity as "name-calling that happens in middle school," despite their hate-based and sexually violent content.

34. The physical assault and the school's refusal to act exacerbated E.M.A.G.'s mental health conditions, requiring medication adjustments and intensifying psychiatric symptoms. His safety and educational access were severely compromised.

35. The conduct of FCPS officials—including Smallwood, Varner, and Rudy—during and after the incident shows a pattern of deliberate indifference, retaliation, and active suppression of evidence. They minimized violent behavior, failed to report the incident to law enforcement as required under § 22.1-279.3:1 and § 22.1-279.1:1 of the Virginia Code, and failed to uphold their duties to protect disabled and minority students.

36. The conduct of Deputy Smallwood, Principal Rudy, and Assistant Principal Varner, as evidenced in the videos "Enzo's Assault Day" and "Parents Watching the Assault Video," reflects not only deliberate indifference but also acts of institutional harassment and intimidation. These officials repeatedly minimized the assault, blamed the victim, and discouraged legal recourse, constituting a hostile environment and retaliatory conduct under 42 U.S.C. § 1983 and Section 504.

37. On April 18, 2025, Plaintiff filed a petition for a protective order in the Winchester, VA Juvenile and Domestic Relations (JDR) Court against Defendants David Rudy, Chance Varner, and School Resource Officer (SRO) Steven Smallwood. The petition alleged that the Defendants failed to protect the minor, E.M.A.G., both before, during, and after the assault, despite prior warnings. Additionally, the Plaintiff contended that the Defendants engaged in retaliation, made false accusations against the victim, intimidated the parents, and denied access to critical evidence. Furthermore, the Plaintiff argued that the Defendants acted with deliberate indifference to the rights of E.M.A.G., a child protected by federal law.

38. On May 5, 2025 the Honorable Judge of the JDR Court issued a ruling dismissing the Plaintiff's request for a protective order against the Defendants. The Court found that the specific legal criteria necessary for the issuance of a protective order under Virginia law had not been met. In its decision, the Court concluded that the legal grounds for granting a protective order against the school officials and the School Resource Officer (SRO) were not satisfied, as defined by the relevant provisions of the Virginia Code.

39. On May 7, 2025, during a recorded conversation between Principal Assistant Mrs. Simmons and Enzo's mother, Deise Ellston, it became apparent that the school was applying a lunch detention to Enzo as a form of retaliation.

40. Mrs. Simmons stated that detention was a consequence of an incident in which E.M.A.G. recklessly threw a water bottle off a balcony, but she denied that the act had the intent to harm anyone. When Deise mentioned that this disciplinary action was a direct retaliation related to the ongoing legal proceedings against the school, Mrs. Simmons denied this, offering no legitimate explanation for the disciplinary action beyond saying that E.M.A.G. "admitted" to the behavior.

41. Plaintiff made it clear that she would not accept this retaliation and was prepared to take legal action against the school and district.

42. Mrs. Simmons attempted to minimize the situation, arguing that the lunch detention was an appropriate consequence for the student's behavior and that it had no relation to any prior incidents.

43. During this conversation, Plaintiff also mentioned that E.M.A.G. was under a **504 Plan** due to his special educational needs.

44. Plaintiff emphasized that, according to the **504 Plan**, E.M.A.G. should not be subjected to punishment without considering his disability and the necessary accommodations outlined for his condition. This fact was ignored by Mrs. Simmons.

45. On May 9, 2025, FCPS-affiliated volunteer Nicole Riegel Marko published defamatory statements on social media, naming E.M.A.G. as a "dangerous student" and spreading false allegations. This conduct violated FERPA, Va. Code § 8.01-45 (defamation), and § 18.2-152.7:1 (harassment by computer).

46. Even after receiving a cease-and-desist letter, Marko did not delete or retract her statements. FCPS refused to remove her from volunteer duties, enabling continued exposure and reputational harm to the student. "

47. Around May 2025, Principal Rudy prohibited E.M.A.G. from speaking Portuguese at school or with his mother by phone. He cited concerns about "what Enzo says about me." This language-based restriction violated Title VI of the Civil Rights Act, the Equal Educational Opportunities Act, and the First Amendment.

48. Internal correspondence from FCPS officials, including HR Director Katie Freakley and Student Services Director Joseph Strong, revealed that school administrators were aware of ongoing bullying, psychiatric risk, and parental complaints. Nonetheless, no corrective action or staff discipline occurred.

49. Despite formal written requests to Superintendent George Hummer demanding the suspension or removal of Marko, Rudy and Varner under Va. Code § 22.1-315 and 8VAC20-23-740, the district failed to comply. Their continued employment created an ongoing risk to E.M.A.G. and other students.

50. FCPS's own FY25 Approved Budget and FY26 Superintendent's Proposed Budget identify anti-bullying and mental health response as strategic priorities. These budgets allocate resources for trauma-informed care, behavioral interventions, and student

support personnel. FCPS's failure to implement these funded programs in response to E.M.A.G.'s case constitutes deliberate indifference and institutional negligence

51.   As a direct and foreseeable consequence of FCPS's and Frederick County VA failures, Plaintiffs withdrew E.M.A.G. from the public school system. He was deprived of educational opportunities, disability services, and a safe school environment, in violation of federal and Virginia laws.

## FACTUAL ALLEGATIONS (SUPPLEMENTAL – OCTOBER 2025 INCIDENTS)

52.   On or about **September 10, 2025**, E.M.G. was physically assaulted by a classmate ("Student B") in the hallway after civics class. The incident was captured on video, showing Student B pushing and slapping E.M.G. without provocation. E.M.G. reported prior similar incidents involving the same student during the week of September 5–7, which the school had failed to address or communicate to his parent. No intervention, investigation, or Title VI assessment was initiated by the administration.

53.   On **October 9, 2025**, while transitioning between English and FACS classes, E.M.G. was again confronted by Student B. During a verbal exchange, Student B slapped E.M.G. in the face, prompting E.M.G. to push the student away in self-defense. The incident was witnessed by a teacher (Ms. White), who intervened and escorted E.M.G. to the classroom and later to the school nurse. He was medically cleared. A written statement was submitted by E.M.G., documenting the unprovoked aggression and identifying a pattern of violence from the same peer.

54.   Despite multiple incidents involving the same aggressor and formal notice from the family, no protective measures were enacted. The school did not discipline Student B, failed to initiate any Title VI, bullying, or behavioral threat protocol, and instead minimized the matter as "peer conflict." E.M.G.'s mother formally requested a transcript of the incident and informed the administration she was considering legal action, including criminal charges.

55.   On **October 14, 2025**, the school accused E.M.G. of inappropriate conduct in a student restroom, based on a claim from two male students that E.M.G. climbed onto a toilet to look over the stall divider. The alleged behavior was classified as "Exposing body parts, lewd or indecent public behavior" under code BSC18 of the student

handbook. No staff member witnessed the event. No surveillance evidence was cited. E.M.G. was not permitted to submit a written statement, and the incident was treated as a disciplinary matter without independent investigation.

56. On **October 15, 2025**, the school issued formal notice to Plaintiff Deise Ellston that E.M.G. would serve **In-School Assistance (ISA)** on **October 16, 2025**, based on the unverified allegations. The notice was issued **one day after the family demanded accountability** for the October 9 assault, raising concerns of **retaliatory discipline** in violation of the First Amendment, Section 504, and 42 U.S.C. § 1983.

57. On or around September 15, 2025, E.M.G.'s treating psychiatric providers modified his prescription to a stronger psychotropic medication regimen in response to a worsening of anxiety, depression, and school-related distress. This change followed multiple instances of bullying, administrative retaliation, and the school's failure to implement adequate behavioral support. Despite the change in medication—which involved increased dosages and new side effects—Defendants failed to make any accommodations or behavioral adjustments, placing E.M.G. at greater risk of emotional dysregulation, fatigue, and academic disengagement.

58. This sequence of events reveals a deeply troubling pattern of **deliberate indifference, conscious negligence, and targeted reprisal** against E.M.G., a Latino-American student with documented disabilities. Despite multiple documented incidents of physical and verbal assault—including the April 8, 2025, attack resulting in Bell's palsy—school officials failed to investigate, report, or intervene. Instead, Defendants prioritized an **unsubstantiated disciplinary allegation** and swiftly imposed punitive measures, including forced lunch detentions and referrals, without procedural protections. This pattern reflects not merely administrative failure but **systemic discrimination,** including **racial and ethnic bias, xenophobia, disability-based animus, and retaliatory enforcement.** E.M.G. was penalized for speaking Portuguese, for being different, and for having a mental health diagnosis. Staff such as Principal Rudy, Assistant Principal Varner, SRO Smallwood, and Teacher Jill Couturiaux exhibited **selective enforcement, malicious disregard for his safety, and indifference to his federally protected rights**, in violation of the **504 Plan, the ADA, Title VI,** and constitutional guarantees under **42 U.S.C. § 1983.** These acts rise to the level of **institutional harassment, abuse of**

authority, and state-sanctioned discrimination against a child with special needs, carried out under color of state law.

## LEGAL BASIS AND SUPPORTING CASE LAW

Plaintiffs assert the following statutory, constitutional, and case law as the legal foundation for this action:

59. **Willful or wanton conduct**

   "Willful or wanton conduct is defined as "action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Miller v. P.G. Harris Constr. Co, 79 Va. Cir. 631, 632 (Norfolk 2009)

   The actions of Defendants Rudy, Varner, Smallwood, Simmons, and Jill Couturiaux, in ignoring reports of bullying, minimizing a physical assault, and imposing retaliatory discipline despite the child's 504 protections, demonstrate reckless disregard for the safety and constitutional rights of E.M.A.G.

60. **Americans with Disabilities Act (ADA), 42 U.S.C. § 12132**

   FCPS's failure to implement E.M.A.G.'s required accommodations — including behavioral supports, mental health safeguards, and protection from disability-based harassment — constitutes a denial of access to public education based on disability. The unlawful punishment imposed by Jill Couturiaux on October 31, 2025, without a manifestation review or parental notification, further violated 34 C.F.R. §§ 104.35–104.36 and the ADA's guarantee of procedural safeguards.

   The school's failure to provide accommodation in response to E.M.G.'s change in medical and psychiatric treatment, including increased dosage of anxiety and depression medication—constitutes deliberate indifference under **Section 504 of the Rehabilitation Act** and the **ADA**. Courts have recognized that when a school is aware of material changes in a student's mental health and treatment plan, it has a legal duty to revisit and adjust accommodations accordingly.

*See: K.M. v. Hyde Park Central Sch. Dist., 381 F. Supp. 2d 343 (S.D.N.Y. 2005); Fry v. Napoleon Community Schools, 580 U.S. 154 (2017).*

*See: Fry v. Napoleon Cmty. Sch., 580 U.S. 154 (2017); S.S. v. Eastern Kentucky Univ., 532 F.3d 445 (6th Cir. 2008).*

61. **Section 504 of the Rehabilitation Act – 29 U.S.C. § 794**

Frederick County Public Schools (FCPS) exhibited **deliberate indifference** to E.M.A.G.'s known disabilities and psychiatric risks, thereby denying him a **Free Appropriate Public Education (FAPE)** as required under federal law. Despite clear documentation of his mental health conditions and a valid Section 504 Plan, FCPS failed to conduct appropriate behavioral assessments, enforce required accommodations, or protect him from repeated peer and institutional harassment.

FCPS also neglected its **procedural obligations** under Section 504 by failing to properly evaluate E.M.A.G. for eligibility, to develop and implement an adequate accommodation plan, and to conduct periodic reviews or reevaluations as mandated. Instead, administrators—including Principal David Rudy and Assistant Principal Chance Varner—employed **unlawful seclusion and restraint** as disciplinary measures, contrary to both federal guidance and state law, despite the behavior in question being directly related to the child's disability.

Moreover, FCPS failed to provide **adequate staff training** regarding the implementation of 504 plans and the individualized needs of students with disabilities, leading to widespread mismanagement, punitive interventions, and exposure to harm. The cumulative effect of these failures rendered E.M.A.G.'s 504 Plan **ineffective and incomplete**, depriving him of meaningful access to education, emotional safety, and behavioral support.

See: *T.K. v. New York City Dep't of Education*, 779 F. Supp. 2d 289 (E.D.N.Y. 2011); *Doe v. East Haven Board of Education*, No. 3:21-CV-00599 (D. Conn. 2023).

62. **Title  45 CFR 84.71**

Pursuant to 45 C.F.R. § 84.71(a), no recipient of federal funds shall discriminate against any individual for opposing practices made unlawful under Section 504 of the

Rehabilitation Act, or for participating in any investigation or proceeding related to such violations. In this case, FCPS officials and staff retaliated against Plaintiffs following protected activity, including internal complaints regarding discrimination, the exercise of rights under the 504 Plan, and parental advocacy. As recognized in *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996), the law "deliberately does not take a 'laundry list' approach to retaliation, because unfortunately its forms are as varied as the human imagination will permit." The retaliatory actions—including increased disciplinary scrutiny, exclusion from services, and hostile treatment—fall squarely within the scope of prohibited conduct under § 84.71.

63. **Family Educational Rights and Privacy Act (FERPA) – 20 U.S.C. § 1232g**
Volunteer Nicole Marko's public disclosure of confidential student information constitutes a violation of federal student privacy rights.
**See:** *Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).*

64. **Virginia Code § 22.1-272.1 – Parental Notification of Suicide Risk**
School counselor Alexa Rogers failed to notify parents after documenting suicidal ideation and auditory hallucinations. This omission violated § 22.1-272.1(A)–(C), which mandates immediate parental notification for students at risk of suicide.

65. **Violation of Virginia Code § 22.1-279.1:1 – Unlawful Use of Seclusion and Restraint**
Virginia Code § 22.1-279.1:1 requires the Virginia Board of Education to establish strict regulations governing the use of restraint and seclusion in public schools, ensuring they align with federal guidelines, define appropriate use criteria, and include mandatory notification and reporting procedures, especially for students with disabilities. In violation of this statute, Frederick County Public Schools (FCPS), including school officials Alexa Rogers, Chance Varner, and Principal Rudy, subjected E.M.A.G.—a child with a documented disability and an active 504 Plan—to unreported and unjustified seclusion, as evidenced in multiple incident reports from February and March 2025. These seclusions occurred without required parental notification, documentation, or evidence of imminent danger, and were administered without consideration for the student's emotional and developmental needs, thereby

contravening both state law and federal guidance. Such actions not only breached statutory protections but also placed E.M.A.G. at significant physical and psychological risk in violation of the Commonwealth's mandated standards.

66. **Virginia Code § 22.1-279.3 (C)–**

Virginia Code § 22.1-279.3(C) affirms that a parent's acknowledgment of receipt of a school's code of conduct does **not waive their constitutional or statutory rights** and explicitly guarantees the right to **disagree with a school's disciplinary actions or policies.** Despite this protection, officials at Frederick County Public Schools (FCPS)— including Principal John Rudy, Assistant Principal Chance Varner, and others teachers —repeatedly imposed punitive measures against Plaintiff's minor son, E.M.A.G., **without lawful justification and against the express, documented objections of his mother.**

Plaintiff Deise Ellston communicated in writing, on multiple occasions, that **no form of detention, isolation (ISA), disciplinary referral, or other punitive action** was to be taken against her son **without her express authorization.** Nonetheless, these officials continued to remove E.M.A.G. from class, isolated him, and penalized him without due process or proper parental engagement. This repeated disregard constitutes a clear violation of § 22.1-279.3(C), which preserves the parent's right to challenge school disciplinary measures and mandates that such disagreement be respected—not overridden.

Though schools may reference the doctrine of *in loco parentis* as a basis for limited supervisory authority, **this doctrine does not grant license to ignore constitutional rights,** nor does it immunize officials from liability when engaging in **abuse, retaliation, or deliberate indifference.** As the Supreme Court emphasized in *Troxel v. Granville*, 530 U.S. 57 (2000), "the liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." Accordingly, when FCPS officials **ignored Plaintiff's lawful refusal to authorize punishment,** they exceeded any lawful authority under *in loco parentis* and violated her fundamental parental rights under the U.S. Constitution and Virginia law.

67. **Violations of Virginia Code §§ 22.1-279.3:1, 22.1-79.4, and 18.2-57 – Assault and Battery Response, Threat Assessment, and Mandatory Reporting Failures**

Following the violent assault on E.M.A.G. on April 8, 2025—which resulted in a neurological injury diagnosed as Bell's palsy—school officials, including Principal Rudy, Assistant Principal Chance Varner, SRO Deputy S.C. Smallwood, and Jill Couturiaux, failed to comply with mandatory procedures under Virginia Code § 22.1-279.3:1 and § 22.1-79.4. These provisions require immediate reporting of student-on-student assaults resulting in bodily injury, as well as prompt initiation of threat assessment protocols. Instead, the school minimized the incident, withheld timely parent notification, failed to file mandatory reports to law enforcement, and took no disciplinary action against the aggressor—constituting a direct violation of Virginia Code § 18.2-57 (Assault and Battery). Additional incidents—such as the April 16, 2025 playground assault, verbal threats in May 2025, and a multi-student attack in October 2025—were likewise disregarded or concealed. Despite teacher and parental reports, FCPS staff failed to document these events, notify law enforcement, or initiate any internal threat assessment or protection measures as required by law. These failures are corroborated by **FOIA Incident Report #25001844**, which confirms that school officials were aware of the April 8 attack but intentionally failed to act. Taken together, these omissions constitute not only **gross negligence and deliberate indifference**, but also a pattern of systemic noncompliance with the legal duties imposed by the Commonwealth of Virginia to ensure the safety of all students, especially those with disabilities or undergoing psychiatric care.

68. **First Amendment Violation**

Under the First Amendment, students are entitled to a learning environment free from verbal harassment, sexual misconduct, and discriminatory abuse. While schools may regulate student speech to preserve decorum (*Bethel School District v. Fraser*, 478 U.S. 675 (1986)), they also bear an affirmative duty to **shield students from hostile and abusive speech that infringes on their right to safety, dignity, and participation** in the educational process.

*See: Tinker v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503 (1969).*

Frederick County Public Schools (FCPS), through the conduct of Principal Rudy, failed this duty. On multiple occasions, school administrators willfully ignored, trivialized, or dismissed sexually explicit, racially motivated, and xenophobic verbal attacks directed at E.M.A.G.. One such attack included a statement by the aggressor referencing the student's mother in degrading sexual terms. When confronted, Principal Rudy responded, "names happen in the school environment," signaling indifference to the impact of hate speech on vulnerable students.

By tolerating and normalizing such speech, FCPS compelled E.M.A.G. to endure a hostile educational environment in violation of Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act, and the First Amendment. Moreover, under Virginia law, the insulting attacks can also give rise to liability pursuant to Virginia Code § 8.01-45 (Action for Insulting Words), which provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." The administration's selective enforcement—punishing E.M.A.G. while excusing aggressors—further amplifies the retaliatory and discriminatory nature of their response, amounting to state-sponsored endorsement of verbal abuse against a child with disabilities and a protected ethnic identity.

69. **Fourteenth Amendment Violation – Equal Protection Clause**

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

Defendants **Frederick County** and **Frederick County Public Schools (FCPS)** violated the Equal Protection Clause by enforcing disciplinary policies in a disparate and unjust manner. On April 8, 2025, the student E.M.A.G. was violently assaulted on school property. Despite the seriousness of the incident, which resulted in a medical diagnosis of Bell's palsy, school administrators and the assigned **School Resource Officer, Deputy S.C. Smallwood,** failed to file a disciplinary report, initiate a criminal investigation, or take appropriate protective measures.

This inaction is confirmed by the publicly released **FOIA Incident Report #25001844,** which documents the school's knowledge of the assault and its failure to comply with required procedures. In contrast, E.M.A.G. was later subjected to administrative

punishment based on an unverified behavioral incident—demonstrating clear selective enforcement and unequal treatment under the law.

Such inconsistency in the application of school rules and disciplinary practices constitutes a violation of the Equal Protection Clause and is actionable under **42 U.S.C. § 1983**.

**See:** *Brown v. Board of Education*, 347 U.S. 483 (1954).

70. **42 U.S.C. § 1983 – Civil Rights Violations Under Color of State Law**
Defendants, acting under color of state law, violated E.M.A.G.'s constitutional rights to bodily integrity, access to public education, and due process, as guaranteed by the Fourteenth Amendment. These violations include failure to report physical assaults, denial of parental notification, and deliberate indifference to federally protected accommodations.
Liability is proper under **42 U.S.C. § 1983**, which provides a remedy for constitutional deprivations by state actors.
**See:** *Goss v. Lopez, 419 U.S. 565 (1975)*
*Gebser v. Lago Vista ISD, 524 U.S. 274 (1998)*
*Doe v. East Haven BOE, No. 3:21-CV-00599 (D. Conn. 2023)*

71. **Title VI of the Civil Rights Act – 42 U.S.C. § 2000d**
Defendants violated Title VI by failing to address and prevent **language-based** and **ethnic harassment** directed at E.M.A.G., and by retaliating against him for speaking Portuguese with his mother by phone. FCPS's inaction and tolerance of discriminatory behavior deprived the student of equal access to educational opportunities on the basis of national origin.
**See:** *Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655 (2d Cir. 2012) (holding school district liable under Title VI for failure to intervene in persistent racial harassment).*

72. **Virginia Code § 22.1-291.4 – Bullying Prevention Training and Reporting**
FCPS failed to comply with state law requiring bullying prevention training and reporting. Staff were not properly trained, failed to implement protective measures,

and tolerated repeated incidents of bullying against E.M.A.G., in violation of the division's statutory obligations to ensure student safety.

73. **Virginia Code § 22.1-279.6 – Board of Education guidelines and model policies**
Frederick County Public Schools (FCPS) failed to enforce its own Student Code of Conduct provisions, which—pursuant to § 22.1-279.6(C)—require clear prohibitions against hazing, verbal abuse, and obscene language or conduct. Despite these mandates and FCPS's published policies for 2024–2025 (including pages 11–13, 15, 17–20, and 25–27 of the Student Code of Conduct), school officials failed to investigate or discipline students for repeated verbal and physical abuse targeting E.M.A.G. These failures constitute a clear breach of the statutory duty to implement and uphold disciplinary policies designed to ensure a safe and respectful learning environment.

74. **Harassment and Intimidation in Violation of Section 504, Title VI, and 42 U.S.C. § 1983**
Defendants **Smallwood, Varner, Simmons, and Rudy,** acting under color of state law and within the scope of their official duties, jointly and individually engaged in a sustained course of conduct that subjected the minor Plaintiff to a **hostile, intimidating, and discriminatory educational environment.** Their actions and omissions—including the minimization of violent incidents, the refusal to acknowledge credible safety threats, and the misrepresentation of documented assaults—constitute **harassment and intimidation** based on protected characteristics and parental advocacy activity.

Through deliberate indifference and retaliation, Defendants fostered an environment in which aggression, humiliation, and emotional harm were normalized, in direct violation of **Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act,** and **42 U.S.C. § 1983.** Such conduct deprived E.M.A.G. of equal protection, due process, and access to a safe educational setting guaranteed under federal law and the Constitution.

75. **Virginia Code § 22.1-292 (2023), § 22.1-315 , and 8VAC20-23-740 – Mandatory Suspension for Staff Misconduct**

Under Virginia law, a teacher or other public school employee may be suspended for good and just cause when "the safety or welfare of the school division or the students therein is threatened" (Va. Code § 22.1-315(A)). School boards are required to follow the prescribed procedural protections before suspending an employee beyond five days. Here, the failure of the Frederick County Public Schools (FCPS) to **suspend, remove, or reassign** staff members (including Assistant Principal Varner, Principal Rudy, and volunteer Marko) despite credible evidence of threats to student safety and documented assaults against the minor Plaintiff constitutes a breach of this statutory obligation. The Defendants' inaction deprived the student population of protection designed to safeguard welfare under the statute.

76. **Virginia Code § 8.01-45 – Civil Defamation & Virginia Code § 18.2-152.7:1 – Harassment by Computer**

Under Virginia law, "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." (**Va. Code § 8.01-45**). Moreover, **§ 18.2-152.7:1** provides that any person who, with intent to coerce, intimidate, or harass another, uses a computer or computer network to communicate obscene, vulgar, profane, lewd, or indecent language, or threatens an illegal or immoral act, is guilty of a Class 1 misdemeanor. Volunteer Nicole Marko's public online statements falsely branding E.M.A.G. as a "danger," and the ensuing refusal of FCPS to remediate or discipline those communications, support a civil defamation claim under § 8.01-45 and a claim of harassment by computer under § 18.2-152.7:1. These violations caused reputational harm, emotional distress, and exposure to further peer aggression for the minor Plaintiff. **Virginia Code § 18.2-60.3 – Stalking and Harassment of a Minor** Marko's continued conduct toward E.M.A.G. after receiving a cease-and-desist letter supports a claim under Virginia's criminal stalking statute.

77. **34 CFR § 300.530 - Authority of school personnel.**

**(f) Determination that behavior was a manifestation.** If the LEA, the parent, and relevant members of the IEP Team make the determination that the conduct was a manifestation of the child's disability, the IEP Team must

## RELIEF SOUGHT

HEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and grant the following relief as authorized by federal and state law, applicable constitutional provisions, and controlling precedent:

78. **Compensatory Damages**

Award compensatory damages in the amount of **$42,000,000** against Defendants Frederick County and Frederick County Public Schools (FCPS), jointly and severally, for the systemic violation of E.M.A.G.'s rights under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act, 42 U.S.C. § 1983, and related Virginia statutes. Said amount reflects damages for:
   - o  Repeated physical injury (including facial paralysis);
   - o  Emotional distress, trauma, and suicidal ideation resulting from bullying, discrimination, County and school district negligence, and school staff gross negligence;
   - o  Educational deprivation and the loss of access to public education;
   - o  Violations of privacy under FERPA and reputational harm;
   - o  Retaliatory and discriminatory treatment based on disability, race, and national origin.

79. **Punitive Damages – $350,000 for Willful Misconduct, Retaliation, and Deliberate Indifference**

Plaintiffs respectfully seek an award of **punitive damages totaling $350,000** against the following Defendants, for their **willful misconduct, gross negligence, retaliation, and deliberate indifference** to the constitutional and statutory rights of E.M.A.G., in violation of **42 U.S.C. § 1983, Title VI, Section 504**, and related laws.

In accordance with **Gebser v. Lago Vista ISD, 524 U.S. 274 (1998)**, **Doe v. East Haven BOE**, and **Brown v. New Haven BOE**, the following allocation of punitive liability is warranted:

- **George Hummer** (Superintendent of Frederick County Public Schools): **$87,500 (25%)**
- **David Rudy** (Principal of R.E. Aylor Middle School): **$87,500 (25%)**
- **Chance Varner** (Assistant Principal): **$87,500 (25%)**

The remaining **$87,500 (25%)** shall be equally apportioned at **$17,500 each** among the following Defendants, who knowingly contributed to the systemic violations:

- **Marcella Simmons** (Assistant Principal)
- **Alexa Rogers** (School Counselor)
- **Nicole Riegel Marko** (School-Affiliated Volunteer)
- **Jill Couturiaux** (Senior Lead Teacher)
- **Deputy Steven Smallwood** (School Resource Officer)

This punitive damage request reflects the **egregious nature** of Defendants' conduct, which included:

- Failure to act upon credible threats of physical violence and bullying;
- Disregard for documented self-harm risks and mental health concerns;
- Retaliation against a student for protected speech, disability status, and parental advocacy;
- Violations of mandatory reporting laws, FERPA, anti-retaliation provisions, and civil rights statutes;

Acts of public defamation and unauthorized punishment despite parental objections.

80. **Injunctive Relief – Termination of Employment or Affiliation**

Issue an **order of removal and permanent disassociation** of Defendants David Rudy, Chance Varner, Nicole Riegel Marko, Alexa Rogers and George Hummer from any

current or future position of employment, supervision, or voluntary affiliation with FCPS, on grounds that:

- o   Their continued presence constitutes an ongoing threat to the health, safety, and civil rights of E.M.A.G. and other students;
- o   Their prior conduct constitutes repeated violations of ADA, Title VI, FERPA, and Virginia Code §§ 22.1-279.3, 22.1-279.3:1, and 22.1-272.1

Reassignment would not be correct but rather enable the continuation of systemic failures.

81. **Injunctive Relief – Termination of Employment or Affiliation**

Plaintiffs respectfully request that this Court issue an order of **permanent injunctive relief** requiring the **immediate termination and disassociation** of the following Defendants from any current or future position of employment, supervision, or volunteer affiliation with **Frederick County Public Schools (FCPS):**

- • **David Rudy** (Principal)
- • **Chance Varner** (Assistant Principal)
- • **Nicole Riegel Marko** (School-Affiliated Volunteer)
- • **Alexa Rogers** (School Counselor)
- • **George Hummer** (Superintendent)

This relief is warranted on the following legal and factual grounds:

These individuals engaged in a **pattern of misconduct and deliberate indifference,** including the failure to report, investigate, or remediate credible threats of violence and mental health crises in direct violation of:

- • **Virginia Code § 22.1-279.3** (Student conduct policy obligations)
- • **Virginia Code § 22.1-279.3:1** (Mandatory threat assessment and parent notification)
- • **Virginia Code § 22.1-272.1** (Duty to report suicidal ideation)
- • **42 U.S.C. § 1983** (Constitutional violations under color of law)

- **Section 504 of the Rehabilitation Act, ADA, FERPA,** and Title VI

Their **continued presence or reassignment** within FCPS would pose an **ongoing and foreseeable risk** to E.M.A.G. and similarly situated students, and would facilitate the **perpetuation of systemic failures** rather than correcting institutional deficiencies. No alternative remedy—such as reassignment or suspension—would provide adequate protection, redress, or assurance of compliance with civil rights obligations moving forward. Accordingly, Plaintiffs request that the Court enter an **injunction barring the named Defendants from future employment, supervisory, or voluntary roles** within FCPS or any other educational institution under Virginia's public school system jurisdiction.

82. **Civil Contempt Sanctions and Compliance Enforcement**

Retain authority to impose **civil contempt sanctions** against FCPS or any individual defendant for future violations of court orders, to ensure ongoing compliance and protection of students' rights.

83. **Costs and Expenses**

Award Plaintiffs **reasonable litigation costs and expenses,** including:

  o  Filing fees;
  o  Mailing and service of process costs;
  o  Documentation and discovery expenses;
  o  Any other reasonable out-of-pocket costs incurred in pursuing this action.

84. **Attorneys' Fees**

Award attorneys' fees under **42 U.S.C. § 1988(b),** should Plaintiffs retain counsel during the course of this action or on appeal.

85. **Additional Relief**

Grant such other and further legal or equitable relief as the Court deems just, proper, and necessary to redress the harms suffered and to deter future violations by the Defendants.

*Respectfully submitted,*

/s/ Deise Almeida Silva Ellston

Plaintiff, Pro Se

almeidaellston@gmail.com

(571) 435-1979


/s/ William James Ellston

Plaintiff, Pro Se

williamellston@yahoo.com

(571) 719-1040